Nos. 23-2201 & 23-2245

_____

United States Court of Appeals
for the Seventh Circuit

_____

United States of America,
Plaintiff-Appellee,

vs.

Ladonta A. Tucker,
Defendant-Appellant.

_____

Appeal from the United States District Court
for the Central District of Illinois
Case Nos. 2:16-CR-20017 & 2:22-CR-20015
The Honorable Judge Colin S. Bruce

_____

Reply Brief of
Defendant-Appellant, Ladonta A. Tucker

_____

Federal Public Defender                Thomas W. Patton
Central District of Illinois           Federal Public Defender
300 W. Main Street
Urbana, Illinois 61801                 Elliot J. Louthen
Phone: (217) 373.0666                  Assistant Federal Public Defender
Fax: (217) 373.0667
Email: elliot_louthen@fd.org           Attorneys for Defendant-Appellant,
                                       Ladonta A. Tucker

_____

**Oral Argument Requested**

_____

# Table of Contents

Issue Presented ................................................................................................ 1

Introduction .................................................................................................... 2

Argument ........................................................................................................ 3

    I.    The government completely ignores *Dubin* and its command that the causal limitation "in relation to" have a limiting principle. ......................... 3

        A.    Unconstitutional vagueness concerns undergird *Dubin* and any criminal offense premised on the phrase "in relation to." ................ 4

        B.    Both Supreme Court and Seventh Circuit 924(c) precedent must be read through the prism of *Dubin*, which solidifies why the "facilitating" standard controls. ......................................................... 7

        C.    The government has not and cannot articulate a limiting principle for the "potential of facilitating" legal standard. ............................. 11

    II.    This Court should vacate Tucker's 924(c) conviction when the government did not carry its burden of proving the "in relation to" element. ................................................................................................... 15

        A.    This Court reviews a motion of acquittal against a clean slate. ......... 15

        B.    The government paid no attention to the "in relation to" element at trial and now seeks to salvage its conviction with a new theory on appeal. .............................................................................. 17

Conclusion .................................................................................................... 21

Certificate of Compliance with Fed. R. App. P. 32(a)(7)(B) ............................. 22

# Table of Authorities

## Cases

*Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884 (7th Cir. 2004) .......... 9

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ................................................................ 4

*Dubin v. United States*, 143 S. Ct. 1557 (2023) ..................................................... passim

*Marinello v. United States*, 584 U.S. 1 (2018) ............................................................. 5

*Smith v. United States*, 508 U.S. 223 (1993) ........................................................ passim

*United States v. Castillo*, 406 F.3d 806 (7th Cir. 2005) ......................................... 16, 20

*United States v. Cotton*, 101 F.3d 52 (7th Cir. 1996) ................................................... 9

*United States v. Davis*, 139 S. Ct. 2319 (2019) ..................................................... 6, 15

*United States v. Donoho*, 76 F.4th 588 (7th Cir. 2023) .............................................. 12

*United States v. Dubin*, 27 F.4th 1021 (5th Cir. 2022) ............................................. 6, 7

*United States v. Duran*, 407 F.3d 828 (7th Cir. 2005) ................................................ 17

*United States v. Durham*, 766 F.3d 672 (7th Cir. 2014) ............................................. 20

*United States v. Evans*, 74 F.4th 833 (7th Cir. 2023) ................................................ 12

*United States v. Hansen*, 143 S. Ct. 1932 (2023) ....................................................... 5

*United States v. Harvey*, 484 F.3d 453 (7th Cir. 2007) .............................................. 10

*United States v. Haynes*, 582 F.3d 686 (7th Cir. 2009) .............................................. 10

*United States v. Maez*, 960 F.3d 949 (7th Cir. 2020) ............................................ 15, 16

*United States v. Mancillas*, 183 F.3d 682 (7th Cir. 1999) ............................................ 9

*United States v. Patterson*, 348 F.3d 218 (7th Cir. 2003) ........................................ 9, 10

*United States v. Pike*, 211 F.3d 385 (7th Cir. 2000) .............................................. 10, 14

*United States v. Stott*, 245 F.3d 890 (7th Cir. 2001) ................................................. 10

*United States v. Taylor*, 31 F.3d 459 (7th Cir. 1994) ............................................ 9

*United States v. Vizcarra-Millan*, 15 F.4th 473 (7th Cir. 2021) ......................... 19

*United States v. Wiltberger*, 18 U.S. 76 (1820) ...................................................... 6

*Van Buren v. United States*, 141 S. Ct. 1648 (2021) ............................................. 7

**Statutes**

18 U.S.C. § 924(c) ...................................................................................... passim

18 U.S.C. § 3553(a) ......................................................................................... 14

**Other Authorities**

Brendan Borrell, *The Next Big Addiction Treatment*, New York Times .............................13

Joel Johnson, *Vagueness Avoidance*, 110 Va. L. Rev. 71 (2024) ............................................ 5

Genna Walsh, *Rescheduling Psilocybin*, Am. Bar Ass'n ....................................................13

*Ventura Introduces Bill to Legalize Psilocybin in Illinois Under
    Limited Use to Treat Mental Health Conditions*, Ill. Senate Democrats ..........................13

**Issue Presented**

I.      Whether the government carried its burden of proving the "in relation to" element of Tucker's 924(c) conviction when the prosecution did not submit any evidence or articulate how the pistol underlying the charge facilitated the predicate offense.

## Introduction

At its core, this appeal raises a line-drawing question. When Congress narrowed the scope of 18 U.S.C. § 924(c)(1)(A) with the causal limitation "in relation to," what conduct did that phrase cut out? Or framed in statutory terms, what are the circumstances where a defendant "carries" a firearm "during" a predicate offense, but not "in relation to" that offense?

Tucker offers a clear line: the firearm must "facilitate," meaning have some purpose or effect on, the predicate offense. That dividing line has the upside of harmonizing 30 years of Supreme Court precedent—from the Court's earliest encounters with 924(c) to its most recent decision interpreting the exact same phrase in another federal criminal statute.

The government, conversely, stands on its malleable "potential of facilitating" legal standard. Yet this position fails to grapple with the Supreme Court's caution that an indeterminate causal limitation like "in relation to" requires a meaningful limiting principle. Put another way, the government has no answer to the questions above— prosecutorial discretion is its dividing line.

After thoroughly examining Supreme Court precedent, the correct interpretation becomes apparent. This Court should clarify that "in relation to" means "facilitating." Applying that standard to the trial below, the government failed to carry its burden of proving the causal element of its 924(c) charge against Tucker—the government wrongly assumed this element automatically applied.

**Argument**

I.     **The government completely ignores *Dubin* and its command that the causal limitation "in relation to" have a limiting principle.**

Boiled down most simply, Tucker's interpretation of "in relation to" in 924(c) derives from Supreme Court precedent, particularly *Dubin v. United States*, 143 S. Ct. 1557 (2023), and *Smith v. United States*, 508 U.S. 223 (1993).

Decided less than a year ago, *Dubin* provides the Supreme Court's most recent blueprint. The Court engaged in an extensive analysis of "in relation to" in the aggravated identity theft statute and relied on multiple canons of statutory interpretation that are equally relevant to 924(c). *Dubin* is also significant because it reflects the Court's continued frustration with indeterminate criminal legal standards—frustration this Court should also bear in mind when reading a firearm statute that is even more punitive.

Turning back 30 years earlier, *Smith* provides the Supreme Court's most direct commentary on 924(c). A careful reading of *Smith* reveals that the Court construed "in relation to" to mean "facilitating." No question, though, the Court also quoted a Ninth Circuit decision that mentioned a "potential of facilitating" standard that has since crept into Seventh Circuit case law. That discrepancy is why a close read of *Smith* and the Court's companion 924(c) decisions is essential to identifying the proper standard.

But to the extent that there is any uncertainty over which legal standard controls—uncertainty this Court may attribute to *Smith*'s acknowledgement that it was not definitively determining what "in relation to" meant—*Dubin* cements why the clearer "facilitating" standard controls.

### A. Unconstitutional vagueness concerns undergird *Dubin* and any criminal offense premised on the phrase "in relation to."

Stunningly, the government buries its head in the sand and chooses not to address *Dubin* in its response brief. Yet *Dubin* is critical to the statutory interpretation issue presented in this appeal. Indeed, it is hard to think of a judicial decision that could be more persuasive than a 2023 Supreme Court case interpreting the exact same "in relation to" causal limitation in another federal criminal statute.

Since the government does not contest it, little would be gained from rehashing the opening brief's examination of *Dubin* and its rationale. See Blue Br. at 22–26. But two aspects of *Dubin*'s reasoning warrant highlighting in reply because they set the table for the rest of this brief. See *Bucklew v. Precythe*, 139 S. Ct. 1112, 1126 (2019) ("[J]ust as binding as th[e] holding is the reasoning underlying it.").

*First*, the Supreme Court made clear that a causal limitation like "in relation to" requires a discernible limiting principle so that the offense does not "automatically appl[y]." *Dubin*, 143 S. Ct. at 1571. This instruction is most prevalent in Part II.D of the opinion, where the Court emphasized that a limiting principle was especially warranted given the severe penalty at issue—a mandatory and consecutive term of imprisonment. See *id.* at 1571–72 (explaining "the enhancement is not indiscriminate, but targets situations" where the offense conduct "warrants a 2-year mandatory minimum"). This is why the Court admonished, "[f]ar from distinguishing, the Government's reading collapses the enhancement into the enhanced," before landing on the narrow "crux of the underlying criminality" interpretation of "in relation to." *Id.*

Put simply, the Supreme Court read the aggravated identity theft statute in a manner that gave Congress's "in relation to" causal limitation independent meaning—that language distinguishes lawful from unlawful conduct. The need for a limiting principle that meaningfully distinguishes lawful from unlawful conduct is equally applicable to the same phrase in 924(c), where the 5-year (or 25-year) penalty is far more severe than aggravated identity theft's consequence.

*Second*, in a related vein, recognize the interpretive principle underlying this caution and *Dubin* writ large: constitutional avoidance. This canon of statutory interpretation narrowly construes indefinite language to avoid any unconstitutional construction—as relevant here, the applicable canon may be more specifically characterized as vagueness avoidance. See Joel Johnson, *Vagueness Avoidance*, 110 Va. L. Rev. 71, 95–101 (2024) (outlining vagueness avoidance as a sub-branch of constitutional avoidance that applies to indeterminate penal statutes); see also *United States v. Hansen*, 143 S. Ct. 1932, 1946 (2023) ("This canon is normally a valuable ally for criminal defendants, who raise the prospect of unconstitutional applications to urge a narrower construction…. When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict.").

This canon preaches humility. Courts must "exercise[] restraint in assessing the reach of a federal criminal statute" to respect due process and separation of powers. *Dubin*, 143 S. Ct. at 1572 (quoting *Marinello v. United States*, 584 U.S. 1, 11 (2018)). This restraint ensures that everyone has fair notice of what the legislature has criminalized (the

due process pillar) and democratically elected legislators do not impermissibly delegate their power to define criminal conduct to relatively unaccountable prosecutors and judges (the separation of powers pillar). See *United States v. Davis*, 139 S. Ct. 2319 (2019) (discussing these "twin constitutional pillars" in the context of vague criminal laws); see also *United States v. Wiltberger*, 18 U.S. 76, 95 (1820) (Marshall, C. J.) ("It is the legislature, not the Court, which is to define a crime, and ordain its punishment.").

With vagueness as the focal point of disagreement between the majority and Justice Gorsuch's concurrence in *Dubin*, this avoidance principle is most prevalent in Part II.E of the majority opinion. After describing the government's conception of the offense as "sweeping," the Court rejected the invitation to trust that "prosecutors will act responsibly" and therefore cabined the statute's potential overbreadth with a narrow construction. *Dubin*, 143 S. Ct. at 1573. In no uncertain terms, the Court invoked vagueness avoidance: "Time and again, this Court has prudently avoided reading incongruous breadth into opaque language in criminal statutes." *Id.* at 1572.

To this "time and again" point, *Dubin* was the latest in a run of recent Supreme Court decisions curtailing broad criminal statutes. One need only look to Judge Costa's dissent in the Fifth Circuit decision below, which laid the groundwork for the Supreme Court's reversal, for a snapshot of all these decisions. See *United States v. Dubin*, 27 F.4th 1021, 1041 (5th Cir. 2022) (Costa, J., dissenting) (listing cases and describing them as a "nearly annual event"). In sum, "[t]he Supreme Court's message is unmistakable: Courts should not assign federal criminal statutes a 'breathtaking' scope when a narrower

reading is reasonable." *Id.* (quoting *Van Buren v. United States*, 141 S. Ct. 1648, 1661 (2021)).

Like *Dubin* and the litany of Supreme Court decisions preceding it, vagueness avoidance is at the heart of this appeal too. When it comes to 924(c), the government's malleable "potential of facilitating" legal standard teeters on unconstitutional vagueness by injecting indeterminate breadth into opaque language. This Court should avoid that sweeping construction.

### B. Both Supreme Court and Seventh Circuit 924(c) precedent must be read through the prism of *Dubin*, which solidifies why the "facilitating" standard controls.

With these lessons from *Dubin* top of mind, this Court can properly return to the Supreme Court's 924(c) jurisprudence. No doubt, the main case on point, *Smith*, is a tough case to untangle. The Supreme Court mentioned two conflicting legal standards— "facilitate" versus "potential of facilitating"—when referencing the "in relation to" causal limitation just a few pages apart. See *Smith*, 508 U.S. at 232–33, 237–38. That is why such a careful reading of *Smith* and the Court's companion 924(c) decisions is necessary to sort out which standard controls.

In terms of an affirmative analysis of what *Smith* holds, Tucker stands on his original account as to why the clearer "facilitate" standard is what the Supreme Court meant. See Blue Br. at 10–13. To recap, the Court's summary that "'in relation to' requires, at a minimum, that the use facilitate the crime" immediately follows its qualification that the statute only reaches a gun that "facilitates or furthers the [predicate]

crime." *Smith*, 508 U.S. at 232. That standard also aligns with the Court's account of the plain meaning of the phrase: the gun "must have some purpose or effect with respect to the [predicate] crime." *Id.* at 238. Conversely, the "potential of facilitating" legal standard arose in the context of a Ninth Circuit quote that simply bolstered the Court's reasoning and conflicts with the Court's stark command that a gun's mere presence does not count. *Id.* ("[I]ts presence or involvement cannot be the result of accident or coincidence.").

To the extent this Court seeks further validation as to why Tucker has the better reading of *Smith*, put the opening and response briefs side by side. Compare Blue Br. at 10–16, with Red Br. at 44–47. The government's repeated nonengagement with Tucker's supporting points is striking:

- The government does not engage with *Smith*'s discussion of how the phrase "in relation to" insulates "innocuous" conduct from punishment—an essential nuance in the majority's response to the dissent.

- The government does not engage with *Stewart* and how the "potential of facilitating" language arose in the context of the Ninth Circuit recounting 924(c)'s legislative history.

- The government does not engage with Justice Blackmun's concurrence in *Smith*, which indicates that "furtherance or facilitation" is the operative legal standard.

- The government does not engage with *Bailey*'s substance and how it effectively overruled the DC Circuit's proximity-based legal standard that parallels the "potential of facilitating" standard.

- The government does not engage with *Muscarello*'s substance and how it counterbalanced its broad interpretation of "carry" with *Smith*'s narrow conception of "during and in relation to."

The government's unwillingness to roll up its sleeves and grapple with Supreme Court precedent demonstrates the weakness of its position.

But even if this Court is not fully convinced by the Supreme Court's 924(c) jurisprudence, Tucker has a fallback position since *Smith* explicitly did "not determine the precise contours of the 'in relation to' requirement here." 508 U.S. at 238. *Dubin* and vagueness avoidance cement that the clearer "facilitate" legal standard controls if there is any ambiguity.

Supreme Court precedent aside, the government similarly avoids the hard work when it comes to Seventh Circuit case law. Once again, the government neglects Tucker's analysis of *Taylor* and *Cotton*. See Blue Br. at 16–17 (discussing *United States v. Taylor*, 31 F.3d 459 (7th Cir. 1994), and *United States v. Cotton*, 101 F.3d 52 (7th Cir. 1996)). The opening brief focused on those two cases because they were the original source of any misunderstanding and served as the basis for subsequent Seventh Circuit decisions, including *Mancillas* in the Pattern Criminal Jury Instructions. See Blue Br. at 17 (discussing *United States v. Mancillas*, 183 F.3d 682, 707 (7th Cir. 1999)). So any in-depth analysis of this circuit's precedent would necessarily have to start with *Taylor* and *Cotton*. Tucker stands on his initial account as to how those cases misconstrued *Smith* and paved the way for later opinions to "drift away from the [source] language." *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 887 (7th Cir. 2004).

In that vein, the government's citations to *Stott* and *Patterson* suffer related defects and cannot supplant *Smith* and *Dubin*. See Red Br. at 34–36. *Stott* relies on *Taylor*

and wrongly insists that spatial proximity alone suffices. See *United States v. Stott*, 245 F.3d 890, 906 (7th Cir. 2001) ("[I]f the drugs and gun are together in the same place it is nearly an inescapable conclusion that they satisfy the in relation to prong of § 924(c)(1)." (quoting *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000))). And *Patterson* summarily quotes the "potential of facilitating" language while omitting that the quote arises in the context of the Ninth Circuit discussing legislative history and without grappling with *Smith*'s contradictory rationale. See *United States v. Patterson*, 348 F.3d 218, 226 (7th Cir. 2003).

Moreover, even if this Court were to read these Seventh Circuit decisions divorced from the tension in *Smith*, notice how none of them explores the boundaries of the "potential of facilitating" standard. Framed through the prism of *Dubin*, these decisions do not squarely confront the doctrinal question of how "in relation to" translates into a discernible limiting principle and what conduct the "potential of facilitating" standard would not reach.

Additionally, these decisions seemingly conflict with later Seventh Circuit formulations that prescribe a "nexus" between the gun and predicate offense. See *United States v. Haynes*, 582 F.3d 686, 702 (7th Cir. 2009); *United States v. Harvey*, 484 F.3d 453, 454 (7th Cir. 2007); Blue Br. at 22 (collecting out-of-circuit cases). Not only does this "nexus" formulation more accurately align with *Smith*'s "facilitating" standard, but it also anticipated *Dubin*, which pointed out "[t]hat the phrase ['in relation to'] refers to a

relationship or nexus of some kind is clear." 143 S. Ct. at 1566. But yet again, the government does not once wrestle with the term "nexus" in its response.

The government's repeated silence on these fronts—from Supreme Court to Seventh Circuit precedent—should set off the alarm bells for this Court, particularly when the government's limiting principle equates to a blank check.

### C. The government has not and cannot articulate a limiting principle for the "potential of facilitating" legal standard.

Identifying the conduct that statutory language like "in relation to" carves out is paramount to providing a limiting principle. That was the impetus for the Supreme Court's caution in Part II.D of *Dubin*, where the Court disclaimed the government's sweeping reading because it offered no meaningful distinction. See 143 S. Ct. 1571–72. Same, too, with *Smith*, where the majority diverged from the dissent on whether to read the term "use" broadly when the causal language served as a counterbalancing limitation: "Although scratching one's head with a gun might constitute 'use,' that action cannot support punishment under § 924(c)(1) *unless it facilitates or furthers the drug crime*; that the firearm served to relieve an itch is not enough." 508 U.S. at 232 (emphasis added). These excerpts underscore the importance of limiting principles.

The government's best attempt at articulating a limiting principle for its "potential of facilitating" legal standard arises in the context of its response to Tucker's contention that "during" and "in relation to" must each have independent meaning. See Red Br. at 46. After maintaining that "[o]ne can easily imagine scenarios" that "in relation to"

would carve out, all the government offers is a single hypothetical: a situation where a hunting rifle and drugs are kept in separate compartments of a car.

The government, however, cannot even fully concede this hypothetical. Instead, the government qualifies its limiting scenario with "depending on other circumstances"—an unsurprising qualification because it contradicts the charging practices of federal prosecutors in the same district. See, *e.g.*, *United States v. Evans*, 74 F.4th 833, 835 (7th Cir. 2023) (charging multiple 924(c) counts, each with 25-year mandatory minimums, when drugs and guns were in two different compartments of a vehicle).

This "it depends" qualification amounts to a "trust us" approach to statutory interpretation. Yet that response runs headfirst into the Supreme Court's persistent rejection of the government's "familiar plea" to prosecutorial discretion. *Dubin*, 143 S. Ct. at 1573 (collecting cases). Indeed, criminal liability should not turn on a "Rorschach test," where "[d]epending on how you squint your eyes, you can stretch (or shrink) [a statute's] meaning to convict (or exonerate) just about anyone." *Id.* at 1574 (Gorsuch, J., concurring); see also *United States v. Donoho*, 76 F.4th 588, 601–02 (7th Cir. 2023) (Easterbrook, J., concurring) ("Laws are supposed to give notice so that people know what they may and may not do…. A conclusion that someone is a scoundrel … is not enough for criminal liability."). This is especially true when the criminal statute carries a 5-year mandatory and consecutive prison term that, in effect, arms prosecutors with overwhelming leverage at the plea-bargaining table.

Notice, too, how the government's hollow dividing line completely evades the Second Amendment issues that arise from a proximity-based analysis. See Blue Br. at 19–21. Turn back to the hypothetical contemplated by the opening brief's introduction. If someone purchases marijuana from a dispensary in Illinois and drives away with their lawfully owned handgun (purchased precisely because it provides a sense of security) stored next to the drugs, the government's legal standard would sweep up that conduct as a violation of 924(c). No question, that gun has the potential of facilitating a predicate drug offense by theoretically providing a means of protection. Under the government's standard, prosecutorial discretion is all that saves that individual from a mandatory term of imprisonment.

Marijuana, to be sure, may be different than other federally illegal drugs, but it is just the tip of the decriminalization iceberg. Mounting evidence indicates that psilocybin—another Schedule I substance—helps treat depression, PTSD, and addiction.[1] Consequently, states like Oregon and Colorado have decriminalized psilocybin, and as of last month, Illinois is on the verge of following suit.[2]

---

[1] See, *e.g.*, Brendan Borrell, *The Next Big Addiction Treatment*, New York Times (last updated June 22, 2023), https://www.nytimes.com/2022/03/31/well/mind/psilocybin-mushrooms-addiction-therapy.html; Genna Walsh, *Rescheduling Psilocybin*, Am. Bar Ass'n (Dec. 20, 2023), https://www.americanbar.org/groups/health_law/publications/aba_health_esource/2023-2024/december-2023/rescheduling-psilocybin.

[2] See *Ventura Introduces Bill to Legalize Psilocybin in Illinois Under Limited Use to Treat Mental Health Conditions*, Ill. Senate Democrats (Feb. 16, 2024), https://www.illinoissenatedemocrats.com/caucus-news/82-senator-rachel-ventura-news/5356-ventura-introduces-bill-to-legalize-psilocybin-in-illinois-under-limited-use-to-treat-mental-health-conditions (discussing proposed Illinois CURE Act).

Consider a world where the General Assembly passes that bill and then return to the hypothetical above. If a veteran in Illinois treats his PTSD with a decriminalized hallucinogenic and drives with both his medically prescribed drugs and lawfully owned gun in his truck, under the potential of facilitating standard, he faces five years in prison—the firearm theoretically provides a means of protection and, according to the government, satisfies 924(c)'s "in relation to" element.

All this is to say, the relationship between drugs and guns will only grow more intertwined in the years to come. And today, in 2024, it is simply no longer true that firearms are a "hallmark" of criminal activity. *Pike*, 211 F.3d at 389 (recounting cases that describe guns as "tools of the [drug] trade"). These concerns provide yet another reason to clarify that "in relation to" is the lynchpin to ensuring that 924(c) only criminalizes guns that facilitate—meaning they have some discernible purpose or effect on—a predicate offense.

Finally, consider the sentencing consequences of the limiting principle turning on "facilitating," rather than "potential of facilitating." If the government cannot carry its burden of proving that a firearm found at the scene of a predicate offense facilitated that offense, the defendant still faces prison time for the predicate, and prosecutors can ask the sentencing judge to "consider[] the severity of the offense." *Dubin*, 143 S. Ct. at 1571. Framed in statutory terms, the government is free to argue under the § 3553(a) factors that the gun played an aggravating role that endangered the community.

This Court can take reassurance in this sentencing dynamic, as it similarly validated the Supreme Court's unease with a related provision in 924(c).

> Everyone agrees that [the defendants] did many things that Congress had declared to be crimes; and no matter how we rule today, they will face substantial prison sentences for those offenses. But does § 924(c)(3)(B) require them to suffer additional punishment, on top of everything else? Even if you think it's *possible* to read the statute to impose such additional punishment, it's *impossible* to say that Congress surely intended that result, or that the law gave [the defendants] fair warning that § 924(c)'s mandatory penalties would apply to their conduct. Respect for due process and the separation of powers suggests a court may not, in order to save Congress the trouble of having to write a new law, construe a criminal statute to penalize conduct it does not clearly proscribe.

*United States v. Davis*, 139 S. Ct. 2319, 2333 (2019).

By aligning 924(c)'s legal standard with *Smith* and *Dubin*, the Seventh Circuit is simply empowering district courts with greater discretion, rather than saddling those courts with mandatory minimums. Defendants like Tucker will still face substantial prison sentences. And if a gun aggravated the offense conduct, a sentencing judge can increase the term of imprisonment accordingly.

## II.     This Court should vacate Tucker's 924(c) conviction when the government did not carry its burden of proving the "in relation to" element.

### A.     This Court reviews a motion of acquittal against a clean slate.

Perhaps intuiting the infirmity of its doctrinal analysis, the government spills considerable ink on the contention that Tucker's argument was waived or forfeited. See Red Br. at 41–43. This contention lacks merit.

Tucker's trial counsel filed a generalized Rule 29 motion of acquittal, which this Court reviews against a clean slate. See *United States v. Maez*, 960 F.3d 949, 959 (7th Cir.

2020). A defendant need not identify a specific objection; a blanket motion of acquittal preserves every sufficiency of the evidence challenge. See *id.* at 959 n.6 (citing the advisory committee's notes to explain why "parties to a criminal case—unlike civil parties—have no general obligation to support these motions with specific reasons"). To this point, trial counsel acted prudently by not specifying 924(c) as the basis for the motion, otherwise Tucker might have risked waiver on appeal. See *id.* at 959.

The government nevertheless tries to shoehorn Tucker's appeal into a jury instruction challenge, but that is an entirely different avenue for relief under Rule 30. Critically, the government's sleight of hand has no legal basis: notice that the government does not cite a single case for the proposition that Tucker had to independently challenge the jury instructions under Rule 30 as well. See Red Br. at 41–43. This lack of precedent explains why the government must also concede that "Rule 30(d) does not apply by its terms." Red Br. at 42.

Maybe it would have been a better strategy for Tucker's trial counsel to object to the jury instructions as well, but this Court's case law indicated that it was not necessary to preserve this issue for appeal. For example, in *United States v. Castillo*, appellate counsel raised a preserved sufficiency of the evidence challenge to a 924(c) charge. 406 F.3d 806, 812 (7th Cir. 2005). This Court reviewed that sufficiency challenge (including the statutory interpretation issue) anew and then turned to an unpreserved jury instruction challenge that the panel reviewed for plain error. See *id.* at 819. Equally informative, Tucker's litigation under Rule 29 treads the same path as the defendant in

*Dubin*—the impetus for this entire appeal. See *Dubin*, 27 F.4th at 1033–34. The Supreme Court had no issue addressing the parallel aggravated identity theft issue under this procedural posture.

At bottom, this Court has made clear that "[l]egal questions presented as part of a sufficiency of the evidence challenge are reviewed de novo." *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005). That rule undergirds this Court's role in "ensuring that a valid legal theory supports the conviction and that there is some evidence from which a rational jury could find in favor of that legal theory." *Id.* at 842. This language, particularly the need for a "valid legal theory," animates this appeal.

**B.     The government paid no attention to the "in relation to" element at trial and now seeks to salvage its conviction with a new theory on appeal.**

To start and level set, Tucker does not dispute two elements of his 924(c) charge. Viewing the evidence in the light most favorable to the government, a reasonable jury could have found the DNA evidence sufficient to infer Tucker "carried" the Cobray pistol. And the fact that police found this pistol next to the crashed vehicle permits a factual inference that one of the defendants brought this firearm into the vehicle "during" the predicate carjacking. Instead, Tucker's appeal has always been about the "in relation to" element—the language that ensures the government cannot levy an additional 5-year prison term every time a gun is found at the scene of a predicate offense, such as a carjacking.

Now, for the first time on appeal, the government articulates a new theory to justify the "in relation to" element of Tucker's 924(c) conviction: the pistol ostensibly provided Tucker a "means of protection." Red Br. at 38. This theory, however, runs into two major problems: the first statutory, and the second evidentiary.

*First*, this "means of protection" theory, at least based on the government's conception, is true of every firearm carried during a predicate offense—it effectively deprives "in relation to" of any meaning relative to "during." If this theory is viable, then the government would never have any independent burden to prove this causal element. The government could always argue on appeal that a gun found at the scene of a crime could have provided a means of protection no matter the record below. "In relation to" would become a truism in 924(c) charges and "automatically appl[y]." *Dubin*, 143 S. Ct. at 1571.

The deficiency with a theory as general as this flows directly from the line-drawing concerns that underlie the "potential of facilitating" standard. This theory provides no meaningful limiting principle that distinguishes lawful from unlawful conduct. To a point in Part I.C above, that is why the government cannot concede its rifle in the car hypothetical—that gun, too, could ostensibly provide a means of protection. And this theory also captures the hypothetical of a veteran who drives with his medically prescribed Schedule I drugs and lawfully owned gun in the truck. In short, the malleability of the "potential of facilitating" standard is what undergirds this theory, yet that is exactly what *Dubin* rejected as a matter of statutory interpretation.

To be sure, evidence that a defendant knowingly armed himself because of some identifiable fear could present offense conduct where the "facilitate" standard is met. For example, if the government introduced evidence that Tucker knew in advance the victim would present a danger and accordingly armed himself to fend off that danger, then a jury could find that the gun facilitated—had a purpose and effect on—the predicate carjacking. But this knowing versus conjectural distinction—as nuanced as it may be—demonstrates the importance of articulating a viable theory to ensure there is meaningful appellate review. This leads to the next, evidentiary problem.

*Second*, the government did not support its newly raised "means of protection" theory with any evidence, which is unsurprising given the prosecutors below never articulated that theory. This evidentiary shortcoming proves decisive even if this Court agrees with the government that the "potential of facilitating" standard controls.

Step back and recall the standard of review that pertains to a sufficiency of the evidence challenge. Even under the leniency this standard affords the government, prosecutors must still put forth *some* evidence to satisfy each element of the charge. See *United States v. Vizcarra-Millan*, 15 F.4th 473, 506 (7th Cir. 2021). That is why this Court has said its review "is deferential but not a rubber-stamp of affirmance." *Id.* To this point, in a case like this where the government's evidence on a specific charge or element is razor thin, this Court will view the conviction more skeptically. See *id.* ("[T]he height of the hurdle the defendant must overcome depends directly on the strength of the government's evidence."). Applying this standard to the causal element in 924(c), this

Court has explained that it must ensure the government "present[ed] a viable theory as to how the gun furthered the [predicate offense]," and relatedly, that the government "present[ed] specific, non-theoretical evidence to tie that gun and the [predicate] crime together under that theory." *Castillo*, 406 F.3d at 815.

With that standard in hand, turn back to the response brief where the government now adopts its protection theory. See Red Br. at 38. Notice what is missing: any citation to the record where trial counsel presented that theory, and even more problematic, any citation to the record that contains specific, non-theoretical evidence supporting it. Said differently, even if this theory is legally viable under the "potential of facilitating" standard, the government still fails to demonstrate that it carried its burden in proving this element at trial. All the jury knew about the Cobray pistol is that it had Tucker's DNA and his co-defendant's lefthand middle and ring fingerprints on it—no evidence demonstrated its pertinence to the carjacking. This record, at least as developed by the government, reflects that this particular pistol had no "purpose or effect with respect to the [predicate offense]." *Smith*, 508 U.S. at 238. That is precisely why the government did not articulate a protection theory below—there was nothing to support it.

The government's trial strategy has consequences on appeal. The lack of evidence creates a "gap in the trial record" that leaves this Court with "no choice but to reverse," especially when "this argument was not raised at trial." *United States v. Durham*, 766 F.3d 672, 679 (7th Cir. 2014) (reversing when "the government introduced no evidence from which a jury reasonably could conclude that *these particular wire transfers*

were made in furtherance of the fraudulent scheme"). When it came to Tucker's 924(c) charge and the Cobray pistol underlying that count, unlike the other two guns, the government failed to carry its burden under both the "facilitating" and "potential of facilitating" legal standards.

## Conclusion

This Court should vacate Tucker's 924(c) conviction and remand for resentencing. Because this offense conduct was at issue in both cases below—the main sentencing and the revocation—this Court should vacate both judgments and allow the district court to fashion a sentencing package that it deems appropriate.

Respectfully submitted,
Thomas W. Patton
Federal Public Defender

s/ Elliot J. Louthen
Elliot J. Louthen
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
Ladonta A. Tucker

**Certificate of Compliance with Fed. R. App. P. 32(a)(7)(B)**

The undersigned certifies that this brief complies with the volume limitations of

Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Circuit Rule 32 in that it contains

5,187 words as shown by Microsoft Word 2016 in preparing this brief.

s/ Elliot J. Louthen
Elliot J. Louthen
Assistant Federal Public Defender

Dated: March 15, 2024